United States District Court
Southern District of Texas
**ENTERED**
June 04, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAUREN KUZNIAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-cv-00237 |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM AND ORDER

This is an appeal from an administrative ruling denying disability benefits. Lauren Kuzniar ("Plaintiff") seeks judicial review of a final adverse decision by the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) Having considered the parties' filings, the record, and the law, the Court finds that the substantial evidence supports the Administrative Law Judge's ("ALJs") determination that Plaintiff was not disabled. The Court therefore AFFIRMS the decision of the Commissioner.

### A. Jurisdiction.

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). The parties have consented to proceed before a magistrate judge for all proceedings in this case, including entry of final judgment. (Doc. Nos. 5, 6.) Thus, this case has been transferred to the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. No. 18.)

### B. Procedural background.

Plaintiff filed an application for supplemental security income ("SSI") under Title XVI on January 20, 2021, alleging disability based on bipolar disorder that began on January 1, 2021.

(Doc. No. 9-7, p. 6.)  Plaintiff's claim was initially denied on June 30, 2021, and again denied

upon reconsideration on March 9, 2022.  (Doc. No. 9-5, pp. 2, 20.)  Plaintiff subsequently

requested a hearing before an ALJ; that hearing was held by telephone on October 17, 2022.

(Doc. No. 9-5, pp. 22-23, 85; *see also* Doc. No. 9-3, pp. 48-63.)

      After considering the evidence and testimony of Plaintiff and vocational expert Byron

Pettingill, the ALJ issued a decision on November 2, 2022, finding that Plaintiff was not disabled

under Section 1614(a)(3)(A) of the Social Security Act and therefore not entitled to supplemental

security income.  (Doc. No. 9-3, pp. 30-63.)  Plaintiff filed a request for review of the ALJ's

decision, and the Appeals Council denied her request on May 12, 2023.  *Id*. at 14-19.  On

September 7, 2023, Plaintiff timely filed this action for judicial review of the Commissioner's

final decision.  (Doc. No. 1.)

      On January 10, 2024, Plaintiff filed a brief in support of her claim.  (Doc. No. 12.)  On

March 13, 2024, the Commissioner filed a response.  (Doc. No. 16.)  On March 22, 2024,

Plaintiff filed a reply.  (Doc. No. 17.)  Plaintiff claims that the ALJ erred as a matter of law by

posing a defective hypothetical to the vocational expert at the hearing and failing to include all

the limitations from prior administrative medical findings in his RFC assessment.  (Doc. No. 12,

pp. 8-17.)  Therefore, Plaintiff concludes, the ALJ's decision was not based on substantial

evidence.  *Id*.  Plaintiff asks the Court to reverse the SSA's decision and award Plaintiff benefits

or remand the decision for further proceedings.  (Doc. No. 1, p. 2 ¶ 12.)

### C.  *Standard of review.*

      Judicial review of the Commissioner's decision regarding a claimant's entitlement to

benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence

on the record as a whole; and (2) whether the decision applied the proper legal standard.

*Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2004)).  Substantial evidence is "more than a mere scintilla and less than a preponderance."  *Perez*, 415 F.3d at 461 (citations and internal quotations omitted).  This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Further, in applying this standard, "[t]he court does not reweigh the evidence in the record, try the issue de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  Rather, the court must scrutinize the record to determine whether substantial evidence is present.  *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").  "If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed."  *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted).  The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision."  *Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits, "a claimant must suffer from a disability."  *Copeland*, 771 F.3d at 923.  A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled for the purposes of disability insurance and supplemental security income, and thus entitled to disability benefits, the ALJ employs a five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2001) (citing *Garcia v. Berryhill*, 800 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof lies with the claimant on the first four steps, and at the fifth step, the burden shifts to the Commissioner, who must show that, in light of the claimant's residual functional capacity ("RFC"), the claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The ALJ need not continue the analysis should, at any step, the Commissioner finds that the claimant is or is not disabled. *See Copeland*, 771 F.3d at 923.

RFC, which is determined between the third and fourth steps, signifies "the most the claimant can still do" despite their physical and mental limitations. *Perez*, 415 F.3d at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 416.945(a). In determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and the claimant's family members regarding the limitations that result from the claimant's symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence used to make a finding about RFC. "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *see Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995). The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

When determining whether a claimant can perform other relevant work at the fifth step, an ALJ may rely upon a vocational expert's testimony, provided the record reflects an adequate

basis for doing so.  *Carey*, 230 F.3d at 145-47.  The issue at Step Five is whether the ALJ's

hypothetical question to the vocational expert reasonably incorporates the disabilities recognized

by the ALJ.  *Bowling*, 36 F.3d at 435.  "A vocational expert is called to testify because of his

familiarity with job requirements and working conditions" and may rely on his expertise to arrive

at the conclusions he gives to the ALJ.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

### D.  *Prior administrative medical findings: initial and reconsideration phases.*

At the alleged onset date, the date Plaintiff alleged that her disability began, Plaintiff was

32 years old.  She earned a general equivalency diploma, but had not worked and was not

currently working.[1]

On June 29, 2021, as part of the initial determination process, Doctor R. Warren issued a

disability determination explanation based on her review of medical and non-medical records,

including a mental status examination conducted in April 2021 by clinical psychologist Doctor

Noel Nick, who interviewed Plaintiff and diagnosed her with unspecified bipolar disorder.  *See*

Doc. No. 9-4, pp. 2-16; *also* Doc. No. 9-8, pp. 2-9; *id*. at 5.  Doctor Warren determined that

Plaintiff "can understand, remember, and carry out simple instructions, make decisions, attend

and concentrate for extended periods, accept instructions, and respond appropriately to

infrequent changes in routine work settings."  (Doc. No. 9-4, p. 13); *see also id*. at 7-13

(concluding that various components of Plaintiff's RFC range from "not significantly limited" to

"moderately limited").  In its denial, dated June 30, 2021, the SSA concluded that although

Plaintiff had "some limitations in [her] ability to function," "the evidence [did] not show that

[Plaintiff's] ability to perform basic work activities [was] as limited as [she] indicated," and her

---

[1] Plaintiff's past work experiences included serving as a car hop in 2011 and a bartender in 2009.  (Doc. No. 9-4, pp. 75, 86.)  Yet, the ALJ concluded that Plaintiff had no relevant past work.  *See* Doc. No. 9-3, p. 41 ¶ 5.

condition did not prevent her ability to carry out daily activities most of the time or adjust to other work. *Id.* at 2.

Upon reconsideration, Doctor Carissa L. Bokelberg issued a new disability determination,[2] concluding similarly that based on the documented findings, Plaintiff was not disabled and that there was no evidence of any substance abuse disorder. (Doc. No. 9-4, p. 25.) Doctor Bokelberg explained that although Plaintiff has limitations and "would certainly function more effectively if sobriety and treatment compliance are maintained,"

> [Plaintiff] should be able to understand, remember, and carry out 1-2 step instructions, remember locations and work-like procedures, maintain sufficient attention and concentration to perform simple tasks and sustain a routine [without] special supervision. In addition, [Plaintiff] retains the ability to perform activities within a schedule, maintain regular attendance, make simple unskilled work-related decisions, be aware of normal hazards, travel to unfamiliar places, and set realistic goals. [Plaintiff] would likely do better in settings requiring minimal social interactions and may work better [with] things rather than [with] people. [Plaintiff] is able to respond appropriately to typical instructions and typical redirection but may have some limitations in conflict situations. [Plaintiff] can adapt to routine and predictable changes in the work-place and would do best in a low stress environment [without] changing demands or quotas.

*Id.* at 24. In denying Plaintiff's claim upon reconsideration, the SSA concluded that Plaintiff has some limitations in her ability to perform work-related activities, but that her condition was not severe enough to keep her from working and that she had the ability to adjust to other work. (Doc. No. 9-5, p. 20.)

### E. The ALJ hearing and subsequent ALJ findings.

On October 17, 2022, Plaintiff appeared by telephone for a hearing before the ALJ.[3] (Doc. No. 9-5, pp. 22-23; Doc. No. 9-3, p. 50.) Plaintiff was represented by counsel, who also

---

[2] Doctor Bokelberg's report was issued on March 1, 2022.

[3] The transcript states that Plaintiff appeared in person, but the ALJ stated that the hearing was being conducted over the phone. (Doc. No. 9-3, p. 50.)

appeared by telephone.  (Doc. No. 9-3, p. 50.)  Plaintiff stated that she earned a general

equivalency diploma, but had not worked and was not currently working.  *Id*. at 53.  Plaintiff

testified that she lived with her mother in an apartment and that she helped her mother by

sweeping, taking out the trash, and going to the store to get the groceries.  *Id*. at 57-58.  In

addition to helping her mother both inside and outside of the home, Plaintiff stated that she sees

her friends and goes to the mall with her mother to shop "a lot, actually" and that she has been to

the mall alone.  *Id*. at 57.

Plaintiff alleged that she became disabled on January 1, 2021, when she received a

diagnosis of bipolar disorder.  (Doc. No. 9-3, p. 51.)  Plaintiff stated that her bipolar disorder

triggered mania, impulsive behavior, and social anxiety, and that her bipolar medication has

made her tired and gain weight.  *Id*. at 54.  Plaintiff also acknowledged that she had substance

abuse issues in the past, but had not used drugs since January 2022.  *Id*. at 55.  Plaintiff testified

that she initially began receiving mental health counseling treatment every week but that her

treatment changed because "they" told her that she was doing "real good;" at the time of the

hearing, she was receiving counseling twice a month.  *Id*. at 56.  She believed that her mental

illness, specifically her symptoms of peer pressure and social anxiety, inhibited her from

working.  *Id*. at 54.

Mr. Pettingill, the vocational expert, then testified – responding to the ALJ's hypothetical

question on whether there were any unskilled jobs in the national economy for an individual with

Plaintiff's characteristics.[4]  (Doc. No. 9-3, p. 60; *see also id*. at 59-63.)  Mr. Pettingill answered

---

[4]  The ALJ's hypothetical described an individual who is 32 years of age (the alleged onset date of Plaintiff's
disability claim), has a GED and no work history, and "has no exertional limitations but is limited to understanding,
remembering, and carrying out simple instructions.  Limited to occasional changes in the work setting.  And limited
to occasional interaction with the public and with coworkers."  (Doc. No. 9-3, p. 60.)

in the affirmative and listed laundry work,[5] janitorial work,[6] and dish washing work[7] – unskilled jobs at a specific vocational preparation ("SVP") level 2[8] and performed at a medium exertional level[9] – as examples of occupations available in the national economy that are available to an individual like Plaintiff. *Id*. at 61. After the vocational expert answered the ALJ's questions, the ALJ asked Plaintiff's counsel if she had any questions, and counsel responded "No, thanks." *Id*. at 62.

After the hearing, the ALJ considered whether Plaintiff was disabled under Section 1614(a)(3)(A) of the Social Security Act, and found Plaintiff was not disabled. (Doc. No. 9-3, p.

---

[5] Dictionary of Occupational Titles ("DOT") No. 361.687-018.

[6] DOT No. 381.687-018.

[7] DOT No. 318.687-010.

[8] SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *See Appendix C: Components of the Definition Trailer*, DICTIONARY OF OCCUPATIONAL TITLES, https://occupationalinfo.org/appendxc_1.html (last revised Apr. 11, 2020). An SVP level of 2 involves "[a]nything beyond short demonstration up to and including 1 month." *Id*.

[9] 20 C.F.R. § 416.967. Physical exertion requirements.

(a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

33.)  In working through the five-step sequential process, the ALJ made the following

determinations:

(1) Plaintiff has not engaged in substantial gainful activity since January 20, 2021, the application date (20 C.F.R. § 416.971).  (Doc. No. 9-3, p. 35.)

(2) Plaintiff has the following severe impairments: bipolar disorder, and methamphetamine use disorder (20 C.F.R. § 416.920(c)).  *Id*.

(3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  *Id*.

(4) Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is limited to understanding, remembering, and carrying out simple instructions; occasional changes in the work setting; and occasional interaction with the public and coworkers.  *Id*. at 37.

(5) Plaintiff has no past relevant work (20 C.F.R. § 416.965).  *Id*. at 40.

(6) Plaintiff was born on September 11, 1988, and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).  *Id*.

(7) Plaintiff has at least a high school education (20 C.F.R. § 416.964).  *Id*.

(8) Transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 C.F.R. § 416.968).  *Id*.

(9) Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969, 416.969a).  *Id*. at 41.

The ALJ also noted that he found the opinions of the "State consultants," – Doctor

Warren and Doctor Bokelberg – "generally persuasive."  (Doc. No. 9-3, p. 40.)  The ALJ stated:

Although the consultants are non-treating and non-examining sources, their opinions are supported by their review of the underlying record, a detailed explanation and their familiarity with Social Security regulations and program standards.  Furthermore, their opinions are consistent with the evidence as a whole, specifically, that recently, when [Plaintiff] was compliant with her medication regimen and not abusing substances, she generally had unremarkable mental status

exams.  Most recently in May 2022, [Plaintiff] reported that she had been taking her medication as prescribed and was feeling stable.

*Id*.  Moreover, the ALJ found Doctor Nick's April 2021 consultative examination findings consistent with the record, specifically that Plaintiff would be able to manage benefit payments when she was not abusing substances.  *Id*.

The ALJ concluded: "Limitations are warranted but [Plaintiff] is not completely precluded from being able to work."  (Doc. No. 9-3, p. 40.)  The ALJ also found, based on the vocational expert's testimony, that jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, including laundry worker, industrial cleaner, and dishwasher occupations.  *Id*. at 41.  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 20, 2021, the date the application was filed, through the date of the ALJ's decision on November 2, 2022.  *Id*. at 42 (citing 20 C.F.R. § 416.920(g)).

Plaintiff subsequently appealed the ALJ's November 2022 decision.  (Doc. No. 9-3, p. 14.)  On May 12, 2023, the Appeals Council affirmed the ALJ's decision.  *See id*. at 14-16.

### F.  *Discussion.*

In this action, Plaintiff challenges the ALJ's decision on a central ground: that the ALJ failed to adequately explain his alleged differing treatment of the prior administrative medical findings ("PAMFs") from the initial and reconsideration determination phases.  (Doc. No. 12, p. 13.)  Plaintiff argues that the ALJ "provided no explanation as to why some limitations from one PAMF were adopted as the RFC assessment and some limitations from the other PAMF were rejected."  *Id*. at 14.  Plaintiff contends that, because the ALJ found both PAMFs "generally persuasive as they were supported by a detailed explanation and were consistent with the evidence as a whole," *id*. at 12-13, the ALJ should have articulated how he considered the

PAMFs in relation to 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5) – the regulation that guides the assessment of "[e]qually persuasive medical opinions or prior administrative medical findings about the same issue."

In addition, Plaintiff argues that the ALJ erred by failing to include the one-two-step instruction and low-stress work limitations opined by Doctor Bokelberg as part of the ALJ's hypothetical to the vocational expert about whether there were occupations available to Plaintiff given the limitations she faced as a result of her bipolar disorder. (Doc. No. 12, pp. 17-18.) Plaintiff concludes that the hypothetical presented to the vocational expert at the hearing was "defective," and "therefore, the ALJ's reliance on the [vocational expert]'s testimony is unsupported by substantial evidence." *Id*. at 18.

The Commissioner contends that the ALJ applied the correct legal standards – that the ALJ was not required to apply the additional factors set forth in 20 C.F.R. § 416.920c(b)(3) and (c)(3)-(5) – because "there is no tie to break" between the opinions of Doctor Warren and Doctor Bokelberg. (Doc. No. 16, p. 7.) The Commissioner further asserts that there was substantial evidence to support the ALJ's RFC determination that Plaintiff was not disabled and able to perform certain occupations available in the national economy because the ALJ properly considered all of the record evidence and did not rely exclusively or excessively on any one factor or group of factors when he evaluated Plaintiff's RFC and symptoms. *Id*. at 4. The Commissioner states: "even if Plaintiff could only perform jobs that require a reasoning level of 1, she still could perform the job of laundry worker, which exists in significant numbers in the national economy." *Id*. at 8. The Commissioner does not expressly counter Plaintiff's criticism of the ALJ's hypothetical question.

Plaintiff replied, contending that the ALJ erred by grouping his analysis of Doctor Warren's and Doctor Bokelberg's opinions in his conclusion that Plaintiff was not completely precluded from being able to work. (Doc. No. 17, p. 3.) Plaintiff asserts that the ALJ's "improper treatment" of Doctor Bokelberg's opinion resulted in defective hypothetical questions posed to the vocational expert during the hearing. *Id.* at 4. Therefore, Plaintiff concludes, the Commissioner did not meet his burden at Step Five of showing that Plaintiff could perform a significant number of jobs in the national economy because all the limitations were not properly provided to the vocational expert.[10] *Id.* at 5.

The undersigned addresses these issues in turn.

### 1. The ALJ sufficiently explained the persuasiveness of the PAMFs in his RFC determination.

For applications filed on or after March 27, 2017, new regulations govern how ALJs evaluate medical opinions in disability cases. Because Plaintiff filed for benefits after March 27, 2017, the ALJ was required to apply these new regulations. "These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology." *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023). Instead, in determining "what weight, if any, to give a medical opinion," the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant; (4) specialization; and (5) a catchall provision for "other factors that tend to support or contradict" the opinion or prior

---

[10] Specifically, Plaintiff claims that Doctor Bokelberg's conclusion that Plaintiff is limited to one-two step tasks would have eliminated the job of industrial cleaner and dishwasher offered by the vocational expert at Step Five because these jobs require a reasoning level of two – while actually "[a] limitation to one-two step instructions is more commensurate with a GED reasoning level of [one]." (Doc. No. 17, p. 5.) "Without testimony of the vocational expert," Plaintiff contends, "we [also] do not know whether any of the three jobs provided at [S]tep 5 fall within the parameters of 'low stress environment,'" which the Dictionary of Occupational Titles ("DOT") apparently fails to address. *Id.*

administrative medical finding.  20 C.F.R. § 404.1520c(c).  The most important factors in

assessing the persuasiveness of a medical source's opinion – whether that source is a treating,

examining, or non-examining physician – are the first and second factors: supportability and

consistency.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, "[a]n ALJ must articulate how

[they] considered the supportability and consistency factors for a medical opinion . . . in their

determination."  *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517,

at *3 (N.D. Tex. Nov. 25, 2020) (citing 20 C.F.R. § 404.1520c(b)(2)).

   With respect to supportability, "the more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1),

416.920c(c)(1); *Vellone ex rel. Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6

(S.D.N.Y. Jan. 29, 2021) ("the strength of a medical opinion increases as the relevance of the

objective medical evidence and explanations presented by the medical source increase").  "As for

consistency, the new rules provide that the greater the consistency between a particular medical

source/opinion and the other evidence in the medical record, the stronger the medical opinion

becomes."  *Vellone*, 2021 WL 319354, at *6 (citing 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(3)).  "[C]onsistency is an all-encompassing inquiry focused on how well a medical

source is supported, or not supported, by the entire record."  *Id*.

   An adequate explanation of supportability and consistency is one that "enables the court

to undertake a meaningful review of whether his finding with regard to the particular medical

opinion was supported by substantial evidence, and does not require the [c]ourt to merely

speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof."  *Luckett v.*

*Kijakazi*, No. 4:20-cv-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (Edison, M.J.)

(quoting *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. Sept. 15, 2021)).

"Stated differently, there must be a discernible 'logic bridge' between the evidence and the

ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL

3708047, at *5 (S.D. Miss. Aug. 11, 2021).

When a medical source provides multiple medical opinions, the ALJ shall articulate how

he "considered the medical opinions or prior administrative medical findings from that medical

source together in a single analysis using the factors," but the ALJ is "not required to articulate

how [h]e considered each medical opinion or prior administrative medical finding from one

medical source individually."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  When the ALJ

"find[s] that two or more medical opinions or prior administrative medical findings about the

same issue are both equally well-supported and consistent with the record, but not exactly the

same, he must articulate in his decision the "other most persuasive factors" in subparts (c)(3)

through (c)(5): the medical source's relationship with the claimant, § 416.920c(c)(3); their

specialization, § 416.920c(c)(4); and "other factors" including, but not limited to, the source's

familiarity with the other evidence in the claim or understanding of the disability program's

policies and evidentiary requirements, § 416.920c(c)(5).  Thus, "[o]n its face, the 20 C.F.R. §

404.1520c(b)(3) writing requirement is only triggered when the ALJ himself *makes a finding* that

two opinions are 'equally well-supported' but 'not exactly the same.'" *Cooley*, 587 F. Supp. 3d

at 497 (emphasis in original).

Plaintiff argues that the ALJ failed to articulate his consideration of the remaining factors

under 20 C.F.R. § 416.920c(c)(3)-(5) because he rejected portions of Doctor Bokelberg's opinion

"without explanation," "despite finding both [Doctor Warren's and Doctor Bokelberg's]

opinions to be equally persuasive, supported, and consistent." (Doc. No. 12, pp. 16-17.) The medical opinions themselves described similar limitations, except that Doctor Warren, in the initial determination stage, concluded that Plaintiff "could understand, remember, and carry out simple instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to infrequent changes in routine work setting[s]." (Doc. No. 9-3, p. 39; Doc. No. 9-4, p. 13.) The most notable contrast in Doctor Bokelberg's opinion upon reconsideration is her determination that Plaintiff "should be able to understand, remember, and carry out 1-2 step instructions." (Doc. No. 9-3, p. 39; Doc. No. 9-4, p. 24.)

Despite Plaintiff's contention that the ALJ failed to build a discernible "logic bridge" between the evidence and the ALJ's persuasiveness finding, Plaintiff's main argument here, at least, appears to be that the ALJ failed to apply the correct legal standard by not considering the three remaining factors in analyzing and expressly distinguishing the medical opinions of Doctor Warren and Doctor Bokelberg. In particular, Plaintiff takes issue with the ALJ's alleged failure to articulate how Doctor Warren's and Doctor Bokelberg's specializations, the fourth factor, influenced the ALJ's evaluation and differing treatment of the two opinions.[11] (Doc. No. 12, p. 16.)

Here, the ALJ found Doctor Warren's and Doctor Bokelberg's medical opinions to be "generally persuasive," "supported by their review of the underlying record," and "consistent with the evidence as a whole, *specifically* that recently, when the claimant was compliant with her medication regimen and not abusing substances, she generally had unremarkable mental status exams, . . . . Limitations are warranted, but the claimant is not completely precluded from being able to work." (Doc. No. 9-3, p. 40 (emphasis added).) The ALJ particularly highlighted

---

[11] Plaintiff acknowledges that the ALJ sufficiently described the factors under paragraphs (c)(3) and (c)(5) in his decision. (Doc. No. 12, p. 16.)

the fact that in May 2022, "Plaintiff reported that she had been taking her medication as prescribed and was feeling stable."  *Id.*; *see also* Doc. No. 9-12, p. 230.

Although the medical opinions themselves described somewhat differing limitations, which the ALJ summarized in addressing the entire record as a whole, *see* Doc. No. 9-3, pp. 37-40, the ALJ did not expressly find those differing limitations "persuasive" in his determination, and the ALJ did not have to so find.  Moreover, the ALJ connected the evidence of Plaintiff's recent mental stability to what he found persuasive about Doctor Warren and Docter Bokelberg's opinions.  In other words, the ALJ built a clear bridge between the evidence and his finding that the opinions of the state consultants were "generally persuasive" on the issue of Plaintiff's recent mental status.  Therefore, he had no conflict of well-supported opinions on the same issue, and thus did not have to continue his analysis of the three remaining factors beyond supportability and consistency.

Even if the ALJ was required to discuss the "other most persuasive factors" under 20 C.F.R. § 416.920c(b)(3), the ALJ met this requirement – including for the specialization factor, which Plaintiff specifically and solely contests.  The ALJ explained that "[a]lthough the [state] consultants are non-treating and non-examining sources, their opinions are supported by their review of the underlying record, a detailed explanation and their familiarity with Social Security regulations and program standards."  (Doc. No. 9-3, p. 40.)  Other courts have found similar statements to sufficiently meet the remaining factors.  *See, e.g.*, *Elizabeth G. v. Comm'r of Soc. Sec.*, No. 8:21-CV-411 (CFH), 2022 WL 1689551, at *10 (N.D.N.Y. May 26, 2022) (finding the ALJ sufficiently articulated the requirements of paragraphs (c)(3) and (c)(4) by explaining that "[a]lthough non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations"); *Wayne P. v.*

*Kijakazi*, No. 8:22-CV-653 (ATB), 2023 WL 3949877, at *9 (N.D.N.Y. June 12, 2023) (similarly finding that the ALJ sufficiently articulated the requirements of paragraphs (c)(3) and (c)(4) by simply noting the medical sources' relationships and specializations as "DDS consultants who only reviewed plaintiff's file," "a consultative examiner who conducted a psychiatric evaluation of plaintiff," and "an NPP" (a nonphysician nurse practitioner)).  As such, the ALJ satisfied his duty in articulating Doctor Warren and Doctor Bokelberg's specialization under 20 C.F.R. § 416.920c(c)(4), as well as the persuasiveness of the medical sources' opinions.

### 2.  The ALJ's hypothetical question to the vocational expert at the hearing was not defective, and thus does not constitute reversible error.

The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'  'If the ALJ does not satisfy his duty, his decision is not substantially justified.'" *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).  One method ALJs use to develop the facts surrounding a disability claim is posing hypothetical questions about the claimant's characteristics to a vocational expert during the claimant's hearing.

Posing a defective hypothetical is reversible error.  *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001); *Moreau v. O'Malley*, No. 9:22-CV-131 (MAC), 2024 WL 1099707, at *4 (E.D. Tex. Feb. 8, 2024); *Orosco v. Comm'r Soc. Sec. Admin.*, 171 F. Supp. 3d 539, 543 (E.D. Tex. Mar. 17, 2016) (citing *Boyd*, 239 F.3d at 708) ("When an ALJ relies on testimony elicited by a defective hypothetical question, the ALJ does not carry his burden to show that despite a claimant's impairments, a claimant could perform available work.").  Yet, if (1) the hypothetical question reasonably incorporates all disabilities of the claimant recognized by the ALJ, and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the

hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)," the hypothetical question is not defective. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

> The ALJ posed the following hypothetical question to the vocational expert:
>
> . . . [A]ssume an individual of the claimant's age at the alleged onset date. Age at that point was 32. Claimant's education, GED. And no work history. The hypothetical individual has no exertional limitations but is limited to understanding, remembering, and carrying out simple instructions. Limited to occasional changes in the work setting. And limited to occasional interaction with the public and with coworkers. Can you identify any unskilled jobs in the national economy that would fit this hypothetical?

(Doc. No. 9-3, p. 60.) The vocational expert responded that pursuant to the limitations raised by the hypothetical, there are unskilled occupations available at a specific vocational preparation ("SVP") level 2 and performed at a medium exertional level, including occupations of laundry worker, industrial cleaner (janitorial work), and dishwasher, which are all significantly available in the national economy. *Id.* at 60-61. After the vocational expert answered the ALJ's questions, the ALJ provided Plaintiff's counsel with the opportunity to ask any questions, but she declined. *Id.* at 62.

Plaintiff argues that the ALJ presented a defective hypothetical to the vocational expert because he "failed to include all the limitations opined by the persuasive PAMFs" of Doctor Bokelberg, specifically the limitations of one-two step instructions and low stress work. (Doc. No. 12, pp. 17-18.) Plaintiff maintains that "simple instructions" and "one-two step instructions" differ in meaning and effect, and "had the ALJ properly included the limitation of one-two step instructions, as opined, the occupations provided may not have been available." *Id.* at 18. Moreover, Plaintiff contends that the ALJ never inquired as to what impact a limitation to low

stress work or work without quotas would have on Plaintiff's ability to perform the occupations that the ALJ found fit Plaintiff's characteristics and limitations. *Id.*

Plaintiff is correct in asserting that "one-two step instructions" and "simple instructions" are not the same limitations, and that an instruction, though simple, may require more than one or two steps – which may impose greater restrictions on occupation availability for individuals with such limitations, and that confusing these principles may pose grounds for remand. *See Guthrie v. Berryhill*, No. 3:17-CV-1114-L-BK, 2018 WL 4376411, at *3-4 (N.D. Tex. Aug. 20, 2018), *adopted in part, rejected in part*, 2018 WL 4362617 (N.D. Tex. Sept. 13, 2018). However, the ALJ did not find that Plaintiff had a one-two step instruction limitation, nor did he conclude that she had a limitation of low stress work or work not requiring quotas. "The ALJ [i]s only obligated to reasonably incorporate in his hypothetical all of . . . [the] disabilities that he recognized." *Herring v. Astrue*, 788 F. Supp. 2d 513, 518 (N.D. Tex. 2011).

The facts here differ from other cases in this circuit, in which the courts have determined that the ALJ committed reversible error in posing a defective hypothetical question to the vocational expert because of omissions or mischaracterizations of certain facts or discrepancies between the hypothetical and a more limited finding by the ALJ. In *Boyd*, the court found the ALJ's hypothetical question defective because it did not reasonably incorporate other impairments described in post-hearing examination reports by medical and psychological experts. *Boyd*, 239 F.3d at 707. In *Bowling*, the ALJ's hypothetical question "assumed that [the claimant] 'could occasionally lift and carry 50 pounds' and 'could frequently lift and carry 20 pounds,'" whereas the ALJ's ultimate finding concluded that the claimant's RFC was limited to lifting no more than 20 pounds. *Bowling*, 36 F.3d at 436. Moreover, the ALJ misrepresented the actual condition of claimant's kidneys, assuming that the claimant's kidney problems had been

resolved – contrary, the court found, to the testimony proffered by the medical expert at the hearing. *Id*. at 436-37. Similarly, in *Guthrie*, the ALJ ultimately found that the claimant was limited to "one- or two-step instructions," but the individual in the hypothetical question posed to the vocational expert was limited to "simple tasks." *Guthrie*, 2018 WL 4376411, at *3. Thus, the ALJ failed to explain how he found that the claimant was able to perform the representative jobs provided by the vocational expert when the ALJ found the claimant more limited than the hypothetical individual. *Id*. at 3-4.

None of these circumstances is present in this case. Here, the ALJ did not find in his final determination that Plaintiff was limited to one-two step instructions or low stress work or work without quotas. What the ALJ recognized in his decision was that Plaintiff "has a residual functional capacity to perform a full range of work at all exertional levels" but with certain nonexertional limitations, and that she "is limited to understanding, remembering, and carrying out simple instructions; occasional changes in the work setting; and occasional interaction with the public and coworkers." (Doc. No. 9-3, p. 37.) The ALJ sufficiently accounted for Plaintiff's limitations in his assessment of her RFC, and the ALJ's hypothetical "tracked each limitation" that he found. *See Herring*, 788 F. Supp. 2d at 519-20 (finding ALJ's hypothetical to vocational expert considered each limitation that ALJ found in his RFC assessment); *also Powell v. Comm'r of Soc. Sec.*, No. 3:19-CV-918-HTW-RPM, 2021 WL 78981, at *9 (S.D. Miss. Feb. 2, 2021) (concluding ALJ's hypothetical to vocational expert was "fully consistent" with doctor's medical report, which ALJ "expressly considered and relied on" in RFC assessment). As stated above, the ALJ did not make a finding that adopted Doctor Bokelberg's conclusions that Plaintiff was limited to one-two step instructions, low stress work, or work with no quotas. The ALJ had merely summarized those conclusions as opined by Doctor Bokelberg. *See id*. at 39-40. And,

unlike in *Boyd*, no evidence adopted by the ALJ or presented after the hearing contradicts the ALJ's assessment or finding. In fact, Plaintiff submitted no medical or non-medical records after the hearing to further support her claim.

Further, the Court finds Plaintiff's counsel was afforded a reasonable opportunity to correct the ALJ's hypothetical question to the vocational expert during cross-examination if she thought the question defective. Counsel could have asked about whether limitations of one-two step instructions, low stress work, or work without quotas would affect her ability to sustain gainful employment or what occupations, if any, exist in the national economy that accommodates those limitations. Instead, counsel declined. *See* Doc. No. 9-3, p. 62. The Court finds that Plaintiff was afforded a reasonable opportunity to correct what she thought was a defective hypothetical question posed by the ALJ. *Hughes v. Berryhill*, No. 7:18-cv-00087-BP, 2019 WL 585440, at \*3-4 (N.D. Tex. Feb. 13, 2019) (finding counsel had reasonable opportunity to correct ALJ's hypothetical question but failed to do so in cross-examination). Thus, the ALJ did not commit reversible error.

### 3. The ALJ's decision was supported by substantial evidence.

Plaintiff claims that, because the ALJ failed to include the one-two-step instruction and low-stress work limitations opined by Doctor Bokelberg as part of the ALJ's hypothetical to the vocational expert, the ALJ's reliance on the vocational expert's testimony is unsupported by substantial evidence. (Doc. No. 12, p. 18.) The undersigned disagrees.

To determine whether there is substantial evidence of disability, the Court weighs four elements: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing

*Wren v. Sullivan*, 925 F.2d 123, 126 (1991)).  In evaluating a claimant's claims of disabling pain to determine the resulting limitations on her ability to work, the ALJ must follow the requirements set forth in 20 C.F.R. §§ 404.1529, 416.929.  According to this regulation, the ALJ must first determine that the claimant has "a medical impairment(s) . . . [that] could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529, 416.929.

Next, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, considering "all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the claimant's] symptoms affect [them]."  20 C.F.R. §§ 404.1529(c), 416.929(c).  Other factors relevant to the ALJ's determination of the claimant's symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, among many other factors.  *Id.* §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ is not required to incorporate limitations in the RFC that he or she does not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (*per curiam*).  "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (*per curiam*) (citations omitted).

The ALJ's responsibility is to "interpret" the medical evidence to determine capacity to work.  *Lasher v. Berryhill*, No. A-17-CV-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept. 21, 2018) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).  For a plaintiff to show the ALJ erred in this determination, "the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict

might appear to exist between a claimant's purported symptoms and the RFC." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at \*4 (N.D. Tex. June 19, 2019), *adopted sub. nom. Crista B. v. Saul*, 2019 WL 2996021 (N.D. Tex. July 9, 2019).  Even if the court determines the evidence "preponderates in [the plaintiff's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings."  *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983); *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir. 1981)).

Social security cases supporting remand demonstrate instances in which the ALJ discounts *all* of the available medical evidence before making an unsupported opinion as to the limitations presented by the applicant's medical conditions and where this error prejudiced the plaintiff.  *See, e.g.*, *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (unpublished); *Gonzalez v. Kijakazi*, No. CV 1:21-40, 2022 WL 317679, at \* (S.D. Tex. Jan. 6, 2022) (Morgan, M.J.), *adopted*, 2022 WL 313907 (S.D. Tex. Feb. 2, 2022); *Ramos v. Saul*, No. CV 1:19-109, 2020 WL 5097160, at \*10 (S.D. Tex. July 29, 2020) (Morgan, M.J.), *adopted*, 2020 WL 5097066 (S.D. Tex. Aug. 28, 2020).

That is simply not the case here.  After considering the persuasiveness of the opinions of the state agency consultants and Doctor Noel Nick, the ALJ properly reviewed the record as a whole.  He considered Doctor Bokelberg's opinion as well as those of Doctor Warren and Doctor Nick, in addition to the other records submitted into evidence, and Plaintiff's testimony at the hearing.  As discussed above, the ALJ concluded, on the basis of the state agency consultants' opinions, that Plaintiff's compliance with her medication regimen and not abusing substances contributed to her ability to feel stable.  *See* Doc. No. 9-3, p. 40; Doc. No. 9-4, p. 24; Doc. No. 9-

8, p. 5. And, the ALJ found Doctor Nick's findings consistent with the record, specifically that Plaintiff can manage making payments and understand the meaning of filing benefits when she was not abusing substances. (Doc. No. 9-3, p. 40; Doc. No. 9-8, p. 7.)

Plaintiff's testimony is also consistent with these findings. She acknowledged that she had last used drugs in January 2022, approximately nine months before the hearing. (Doc. No. 9-3, p. 55.) She also stated that she had improved with mental health counseling treatment, so much so that her treatment changed from weekly sessions to biweekly sessions. *Id*. at 56. Impairments controlled by medication are not disabling, *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986), nor is substance abuse disabling if it is not beyond control or an impediment to daily activities or work, *Neal v. Bowen*, 829 F.2d 528, 531-32 (5th Cir. 1987) (finding no disability in claimant who was able to control his alcoholism through medication and had not had a drink for the five weeks preceding the hearing). Plaintiff also testified that she was able to consistently perform chores around the house and socialize in public by going to the mall with her mother and occasionally spending time with friends. (Doc. No. 9-3, p. 55.) The ALJ's RFC assessment thus does not conflict with Plaintiff's symptoms, nor does Plaintiff assert more than a conclusory argument that the ALJ lacked substantial evidence because his hypothetical did not include Doctor Bokelberg's opinion on Plaintiff's limitations.

As explained above, for a plaintiff to show the ALJ erred in his determination, she "must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC." *Crista B.*, 2019 WL 2996553, at *4. Even if the court determines the evidence "preponderates in [Plaintiff's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings." *Carry*, 750

F.2d at 482.  Further, "[a]n ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ."  *Rodgers v. Comm'r, Soc. Sec. Admin.*, No. 4:23-CV-00429-P, 2024 WL 911820, at *1 (N.D. Tex. Mar. 4, 2024) (citing *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).  Here, Plaintiff has not shown that no reasonable person could find support in the record for the ALJ's RFC assessment or that the evidence preponderates in her favor.  Therefore, she has not met her burden to support remand or reversal.

In sum, the ALJ based his disability determination upon substantial evidence in a sufficiently developed record, and he did not err in relying on the vocational expert's testimony in crafting his RFC assessment.  Therefore, substantial evidence supports the ALJ's RFC finding and disability determination.

### G.  Conclusion and recommendation.

After review of the parties' briefing, the record, and the relevant law, and for the reasons discussed above, the undersigned concludes that the Commissioner applied the proper legal standard in evaluating the PAMFs, determining Plaintiff's RFC, and finding Plaintiff not disabled, and that the Commissioner's decision was supported by substantial evidence.  The Court therefore AFFIRMS the decision of the Commissioner.  A final judgment will issue separately.

SIGNED on June 4, 2024.

MITCHEL NEUROCK
United States Magistrate Judge

25/25